
DA 09-0357

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2010 MT 11

STATE OF MONTANA,

      Plaintiff and Appellee,

   v.

KRISTIN COOPER,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DC 08-296B
Honorable Mike Salvagni, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Robin A. Meguire, Attorney at Law; Great Falls, Montana

      For Appellee:

            Hon. Steve Bullock, Montana Attorney General; C. Mark Fowler,
Assistant Attorney General, Helena, Montana

            Marty Lambert, Gallatin County Attorney; Scott Lanzon, Deputy
County Attorney, Bozeman, Montana

Submitted on Briefs:  November 18, 2009

Decided:  January 26, 2010

Filed:

_____
                      Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1    Kristin Cooper (Cooper) appeals from findings of fact, conclusions of law, and order of the Eighteenth Judicial District Court, Gallatin County, denying her motion to suppress evidence of driving under the influence of alcohol or drugs (DUI). We affirm.

¶2    The issue on appeal is whether Trooper Kloster had particularized suspicion to stop Cooper's truck.

## BACKGROUND

¶3    Just after 11:00 on the snowy evening of March 8, 2008, Montana State Trooper Adam Kloster (Kloster) was working a special event known as the Dirt Bag Ball at Buck's T-4 on Highway 191 south of Big Sky. Kloster knew that Buck's T-4 serves alcohol. Kloster was traveling north on Highway 191 when he saw Cooper's blue pickup truck leave the Buck's T-4 parking lot. Kloster testified that the pickup truck did not come to a stop before entering the highway, but "abruptly" pulled out onto the highway in front of Kloster, forcing him to take evasive action to avoid a possible crash. Believing that the driver could be impaired, Kloster continued to observe the truck in anticipation of a traffic stop. Kloster observed the truck in his rear view mirror cross the fog line, perform a U-turn, and proceed northbound behind his patrol vehicle. Kloster further testified that Cooper was driving "incredibly slow." After Cooper stopped at a gas station, Kloster remained in the area and followed her truck for a few minutes. Although Kloster observed that Cooper's rear license plate was covered with snow and ice, he did not observe any erratic driving. Kloster initiated a traffic stop, informing

2

Cooper that the reason he stopped her was because her license plate was obstructed with snow. After stopping Cooper's truck, Kloster smelled marijuana smoke. Cooper was cited for DUI after performing field sobriety tests.

¶4 Cooper moved to suppress evidence gathered after the traffic stop, arguing that Kloster lacked particularized suspicion to stop her. The motion was denied in justice court and she was convicted in a jury trial. Cooper appealed to the District Court where her motion to suppress was denied following a hearing on March 23, 2009. Cooper then pled guilty, reserving her right to appeal the denial of her motion to suppress pursuant to § 46-12-204(3), MCA. Cooper now appeals from the denial of her motion to suppress as contained in the District Court's findings of fact, conclusions of law, and order filed on April 10, 2009.

## STANDARD OF REVIEW

¶5 This Court reviews the denial of a motion to suppress evidence to determine whether the district court's findings of fact are clearly erroneous and whether the court correctly applied those findings as a matter of law. *State v. Rutherford*, 2009 MT 154, ¶ 9, 350 Mont. 403, 208 P.3d 389. "A trial court's findings are clearly erroneous if they are not supported by substantial credible evidence, if the court has misapprehended the effect of the evidence, or if our review of the record leaves us with a definite and firm conviction that a mistake has been made." *State v. Deines*, 2009 MT 179, ¶ 6, 351 Mont. 1, 208 P.3d 857. We review for clear error a finding that an officer had particularized suspicion to conduct an investigative stop. *Rutherford*, ¶ 9.

## DISCUSSION

3

¶6    *Whether Trooper Kloster had particularized suspicion to stop Cooper's truck.*

¶7    Both the United States Constitution and the Montana Constitution prohibit unreasonable searches and seizures. U.S. Const. amend. IV; Mont. Const. art. II, § 11. These protections apply to investigative stops of vehicles. *State v. Gopher*, 193 Mont. 189, 194, 631 P.2d 293, 296 (1981). Montana law provides that "a peace officer may stop any person or vehicle that is observed in circumstances that create a particularized suspicion that the person or occupant of the vehicle has committed, is committing, or is about to commit an offense." Section 46-5-401(1), MCA. The State must prove that an officer had particularized suspicion to stop a vehicle by showing: (1) objective data and articulable facts from which an officer can make certain reasonable inferences; and (2) a resulting suspicion that the person to be stopped has committed, is committing, or is about to commit an offense. *Brown v. State*, 2009 MT 64, ¶ 20, 349 Mont. 408, 203 P.3d 842; *Gopher*, 193 Mont. at 194, 631 P.2d at 296. Whether particularized suspicion exists is a question of fact that depends on the totality of the circumstances. *Rutherford*, ¶ 12.

¶8    Trooper Kloster had objective data and a resulting suspicion of criminal activity upon which to justify stopping Cooper's truck. Kloster's articulable facts included his observation of Cooper's truck pulling into oncoming traffic, nearly causing a collision; Cooper leaving the parking lot of a bar hosting a special event known to serve alcohol; Cooper driving "incredibly slow"; and Cooper's truck travelling over the fog line. This Court has concluded that particularized suspicion existed based, in part, on an officer's observations of the defendant's "unusually slow speed, and [his] meandering from the edge of the road to across the center of the road." *State v. Van Kirk*, 2001 MT 184, ¶ 17,

4

306 Mont. 215, 32 P.3d 735. Similar to *Van Kirk*, here Trooper Kloster suspected that Cooper could be impaired based on her unusually slow speed and passing over the fog line, in addition to her leaving the parking lot of a bar and crossing into oncoming traffic. Based on the totality of the circumstances, we conclude that Trooper Kloster had particularized suspicion to stop Cooper's truck.

¶9 Cooper argues that Kloster's failure to inform her of all reasons for stopping her is sufficient basis to disregard evidence of those observations. Cooper relies on § 46-5-401(1), MCA, providing that an officer conducting an investigative stop "shall as promptly as possible inform the person of the reason for the stop" to support this contention. However, an investigating officer need not identify a particular statutory violation or even cite a defendant for a moving violation in order to establish a particularized suspicion. *State v. Schulke*, 2005 MT 77, ¶ 18, 326 Mont. 390, 109 P.3d 744.

¶10 Cooper further attempts to question Kloster's credibility regarding the near collision by citing his failure to mention this observation in his report and initiate the traffic stop earlier. We have repeatedly concluded that this Court will not reweigh conflicting evidence or substitute our evaluation of the evidence for that of the district court on appeal. *Deines*, ¶ 20. "We defer to the district court in cases involving conflicting testimony because we recognize that the court had the benefit of observing the demeanor of witnesses and rendering a determination of the credibility of those witnesses." *Deines*, ¶ 20. Accordingly, we will not reconsider the credibility of Trooper Kloster on appeal.

5

¶11 We conclude that Trooper Kloster had particularized suspicion to stop Cooper's truck based on the totality of the circumstances here. The District Court's finding that Trooper Kloster had particularized suspicion to stop Cooper was not clearly erroneous and the denial of Cooper's motion to suppress was correct.

¶12 Affirmed.

/S/ MIKE McGRATH

We concur:

/S/ PATRICIA O. COTTER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE

Justice James C. Nelson, specially concurring.

¶13 I concur in the Court's Opinion because, based on the totality of his observations and the existing circumstances, Trooper Kloster had particularized suspicion that Cooper was driving under the influence. *See* Opinion, ¶ 8.

¶14 The fact that Kloster told Cooper the reason he stopped her was because her rear license plate was obscured by snow is troubling, however. If, in fact, that was all on which he had based his stop, then I would have concluded that he did not have sufficient particularized suspicion for detaining Cooper. I addressed such stops at length in my concurrence in *State v. Rutherford*, 2009 MT 154, ¶¶ 24-28, 350 Mont. 403, 208 P.3d 389 (Nelson, J., concurring).

¶15 Unfortunately, however, the point I made in that concurrence has now manifested itself in this case: A peace officer (at least insofar as what he told the defendant) based particularized suspicion for a DUI stop on the vehicle's license plate being obstructed by a natural accumulation of snow. I continue to disagree with the proposition that, in this state, a license plate's being obscured by the natural accumulation of the elements or driving conditions can constitute particularized suspicion for *anything*—except that Montanans often drive in foul weather and on foul roads.

¶16 Indeed, as I write this (in early January) and look out from my office over a parking lot filled with hundreds of cars, many of them have a rear license plate obscured by snow. I refuse to believe that the law would allow a peace officer to perform a traffic stop on any one of those motorists solely because the rear license plate of her vehicle is obscured by snow. Interpreting § 61-3-301(1)(a), MCA, in this fashion is absurd, given that Montanans must often drive in snow, sleet, mud, dirt, and dust. Statutory construction should not lead to absurd results if a reasonable interpretation can avoid it. *Montana Sports Shooting Assn. v. Dept. of Fish, Wildlife, and Parks*, 2008 MT 190, ¶ 11, 344 Mont. 1, 185 P.3d 1003.

¶17 If § 61-3-301(1)(a), MCA, requires motorists to stop every quarter mile to brush natural accumulations of snow, sleet, mud, dirt, and dust off their rear license plates so as to keep them "unobstructed," then traveling the highways and byways of the Big Sky State is going to be not only immeasurably slower, but also much more dangerous. Worse, this sort of interpretation of the statute will serve as nothing more than a

justification for pretextual traffic stops and for seizures violating motorists' rights of individual privacy and the guarantee against unreasonable seizures.[1]

¶18    Accordingly, I would hold that particularized suspicion for a traffic stop cannot be based solely on the fact that a vehicle's rear license plate is obscured by the natural accumulation of the elements or driving conditions.

¶19    With that caveat, I concur.


                                        /S/ JAMES C. NELSON

---

[1] Mont. Const. art. II, §§ 10, 11.